## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**SONDRA GARCIA,**

      Plaintiff,

v.                                    No. CIV 00-238 BB/LFG-ACE

**JORGE L. CONDARCO** and **BRENDA
SMITH,** in their individual capacities, and
**THE CITY OF HOBBS,**

      Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' *Motion to Dismiss Count III of Plaintiff's Complaint,* filed June 23, 2000 (Doc. 24).  The Court has reviewed the motion, the memoranda submitted by the parties, and the relevant authorities, and finds Defendants' argument is well taken and, therefore, GRANTS Defendants' motion to dismiss Count III.

### I.  BACKGROUND

In her Complaint, Plaintiff alleges that on or about June 6, 1998, while detained at the Hobbs City Jail, Defendant Condarco approached her and, after talking with her for a short while, began to "rub her back, shoulders, and hair, to kiss her, and to fondle her breasts."  Doc. 1 at 2.  Plaintiff then alleges Defendant Condarco took her to the laundry

room and forced her to perform oral sex on him.  Id. at 3.  Defendant Condarco

subsequently pled guilty to criminal sexual penetration of Plaintiff.  Id.

On February 16, 2000, Plaintiff filed a Complaint in federal court alleging civil

rights and tort violations (Doc. 1).  In Count III of the Complaint, Plaintiff alleges all

three Defendants discriminated against her on the basis of sex in the provision of services

or facilities in connection with housing, in violation of the Fair Housing Act ("FHA"), 42

U.S.C. § 3601 *et seq*.  In the motion currently before the Court, Defendants argue the

Hobbs City Jail is not a "dwelling" as defined in the FHA and therefore Plaintiff's FHA

count should be dismissed for failure to state a claim.

## II.  DISCUSSION

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate when,

"accepting the well-pleaded allegations of the complaint as true and construing them in

the light most favorable to the plaintiff," it appears "the plaintiff can *prove* no set of facts

in support of the claims that would entitle him to relief."  Yoder v. Honeywell, Inc., 104

F.3d 1215, 1224 (10th Cir. 1997).  The Court evaluates Defendants' motion to dismiss

Count III under this standard.

### B.  Analysis

The courts have generally recognized that whether a jail or prison is considered a

residence or dwelling depends upon the context.  For example, in Sioux Falls Cable

Television v. State of South Dakota, 838 F.2d 249 (8th Cir. 1988), the Court considered

the purpose of the Cable Communications Policy Act, 47 U.S.C. § 605, to determine

whether the State should be enjoined from intercepting satellite signals and

"retransmitting" them to prison cells.  The Court of Appeals agreed with the district court

"that the private viewing exception must be given a practical and common sense

interpretation" and concluded that for purposes of the private use "exception" to the Act,

each individual's cell was a "private dwelling unit."  838 F.2d at 255.  In People v.

Nichols, 920 P.2d 901 (Colo. Ct. App. 1996), the Court held for purposes of a burglary

statute a jail "cell qualifies as a dwelling."  *See also* People v. McDade, 280 Cal. Rptr.

912 (Cal. Ct. App. 1991); Bousman v. State, 338 N.E.2d 723 (Ind. Ct. App. 1975).  For

purposes of service of process, however, the courts have distinguished a jail from a

residence.  *See* State v. Montgomery, 242 So. 2d 818, 820 (La. 1970); Leidy v. Edwards,

46 A.2d 723 (N.J. Dist. Ct. 1946).  Initially, then, the Court must consider the definition

of dwelling within the context and purpose of the FHA.

The FHA provides that it is unlawful "[t]o discriminate against any person in the

terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of

services or facilities in connection therewith, because of race, color, religion, sex, familial

status, or national origin."  42 § U.S.C. 3604(b).  Further, the FHA defines dwelling as:

> any building, structure, or portion thereof which is occupied
> as, or designed or intended for occupancy as, a *residence* by
> one or more families, and any vacant land which is offered for
> sale or lease for the construction or location thereon of any
> such building, structure, or portion thereof.

42 § U.S.C. 3602(b) (emphasis added).  The question before the Court is:  Considering

the purpose of the FHA and the definitional language, does the Hobbs City Jail constitute

a "dwelling"?

In general, the courts have given the FHA a generous construction in order to

"effectuate its broad and inclusive language."  Woods, 884 F. Supp. at 1173.  This

generous construction is apparent in the range of structures that courts have found to be

"dwellings" within the meaning of the FHA: trailers for migrant workers[1], unit in time-

share resort[2], nursing home for handicapped elderly people[3], residential facility for

homeless families,[4] residential school for emotionally disturbed adolescents,[5] summer

bungalows run by a country club,[6] an AIDS hospice,[7] cooperative apartment complexes,[8]

and a children's home.[9]

---

[1]      Lauer Farms, Inc. v. Waushara County Bd. of Adjustment, 986 F. Supp. 544, 559 (E.D. Wis. 1997).  Lauer cites to many of the cases listed.  Id. at 549.  See also, Hernandez v. Ever Fresh Co., 923 F. Supp. 1305, 1307-08 (D. Or. 1996) (temporary housing for migrant farm laborers constitutes "dwelling" under FHA); Villegas v. Sandy Farms, Inc., 929F. Supp. 1324, 1327-28 (D. Or.1996) (farmer's cabins used by migrant workers are "dwellings" within the meaning of the FHA).

[2]      Louisiana Acorn Fair Housing v. Quarter House, 952 F. Supp. 352, 359-60 (E.D. La. 1997).

[3]      Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1102 (3d Cir. 1996).

[4]      Woods v. Foster, 884 F. Supp. 1169, 1173 (N.D. Ill. 1995).  See also, Turning Point, Inc. v. City of Caldwell, 74 F.3d 941 (9th Cir.1996) (homeless shelter is a "dwelling" under FHA).

[5]      United States v. Massachusetts Indus. Fin. Agency, 910 F. Supp. 21, 26 n. 2 (D. Mass.1996).

[6]      United States  v. Columbus Country Club, 915 F.2d 877, 881 (3d Cir. 1990).

[7]      Baxter v. City of Belleville, 720 F. Supp. 720, 731 (S.D. Ill. 1989).

[8]      Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032 (2d Cir. 1979).

[9]      United States v. Hughes Memorial Home, 396 F. Supp. 544, 549 (W.D. Va. 1975).

On the surface, the Hobbs City Jail shares a number of features in common with structures that have been considered dwellings under the FHA.  At first glance, then, the Hobbs City Jail might appear to fall within the meaning of "dwelling" under the FHA. One test created to define "dwelling" under the FHA focuses on whether the occupant has the intent to return or is making just a transient visit.  This test, however, does not illuminate the status of the Hobbs Jail since Plaintiff neither intends to return[10] – her stay in the jail is an involuntary confinement -- nor is her stay at the jail a transient visit – she faces detention up to one year.  The cases finding specific structures "dwellings" within the meaning of the FHA are, however, linked by a more applicable common, albeit sometimes implicit, feature – they are primarily "designed or intended for occupancy, as a residence."  Therefore, the features in common between the Hobbs City Jail and structures found to be "dwellings" within the meaning of the FHA should not obscure the glaring difference between them:  The Hobbs City Jail is designed as a detention facility not a "residence."  It is this difference that proves critical within the overall purpose of the FHA.

In many FHA cases, the court expressly identifies the structure in question as a residence or home.  In Woods, for example, the court rejected the defendant's argument that plaintiff had no intent to return to the homeless shelter, finding "[b]ecause the people

---

[10]        Although the cases always refer to an intent to return, the Court notes that with respect to some structures falling within the meaning of "dwelling" under the FHA, i.e., nursing home, AIDS hospice, and children's home, it is more appropriate to speak of an intent to remain, rather than an intent to return.  For simplicity, the Court uses the phrase "intent to return" to cover both.

who live in the Shelter have nowhere else to 'return to,' the Shelter is their residence in

the sense that they live there and not in any other place."  884 F. Supp. at 1174.[11]  In

Villegas, for example, the court considered whether cabins for migrant workers fell

within the meaning of "dwelling" under the FHA.  The court found that the cabins were

clearly within the broad purpose of the Act to eliminate discrimination in housing, and

concluded that the nature of the workers' occupancy resembled that of a resident and that

"[l]ike the occupants of a homeless shelter, during the farmworkers' employment by

defendant, the cabins are their homes." 929 F. Supp. at 1328.  In Baxter, the court,

contemplating the "dwelling" status of an AIDS Hospice, found since the plaintiff

"indicated that the facility is to be a home for HIV victims in need of a place to live ...,

[t]hus, the premises may be considered a dwelling."  720 F. Supp. at 730.

Similarly in Columbus, 915 F.2d at 881, the court found summer homes[12] to be

"dwellings" within the meaning of the FHA, and in Hughes, the court found the

children's facility was a residence: "[t]he record establishes that, as the very title of the

institution implies, the Home is far more than a place of temporary sojourn to the children

who live there, and that they are in fact, as the Home's officials refer to them, residents."

396 F. Supp. at 549.  Additionally, in Hovsons, the court determined a nursing home for

the elderly fell within the meaning of "dwelling" under the FHA.  The court concluded,

---

[11]     This is supported by the court's later explanation that plaintiffs "have no other place to 'return
to' or reside ...."  884 F. Supp. at 1174.  The court specifically equates a place that one intends to return with a
place one resides.

[12]     The court explained that the summer homes are "bungalows."  915 F.2d at 878.

"[t]o the handicapped elderly persons who would reside there, Holiday Village would be their home, very often for the rest of their lives." 89 F.3d at 1096.

Given the superficial similarities between the Hobbs City Jail and other structures found to be "dwellings" under the FHA, and the generally generous construction of the FHA, it is not surprising that there is argument over the "dwelling" status of a jail.[13] Nonetheless, it is clear to the Court from interpreting the "residence" language of the FHA that there is fundamentally a distinction between a home on the one hand, and a detention facility on the other.[14]  The Hobbs City Jail is not designed or intended as a "residence" for detainees; rather, it is designed and intended to be a penal facility.

Essential to the distinction between a home and a detention facility is purpose. The Uniform Residential Landlord and Tenant Act ("Uniform Act") is analogous to the FHA in that it is designed to prevent unfair housing practices.  *See* Uniform Act, §§ 1.302 and 1.303.  It is significant therefore that the draftsmen made it clear that the Uniform Act "is not intended to apply where residence is incidental to another primary purpose such as residence in a prison ...."  Comment, Uniform Act, § 1.202.  *See also* Ohio Stat. Ann. 5c RC 5321.01 excluding "prisons, jails, workhouses and other places of incarceration or correction" from the definition of "residential premises" under the Ohio Landlord Tenant Act.

_____

[13]        This confusion is not only predictable, but probably exacerbated by common expressions such as references to jails "housing people."

[14]        Again, this Court agrees with the finding in Gold that "[u]sing its ordinary meaning and common sense a detention center is not a home."  Slip op. at 6.

A jail is not, as the FHA requires, "designed or intended for occupancy as a residence." Rather, the primary purpose of a jail is to provide just punishment, adequate deterrence, protection of the public, and correctional treatment. *See* 18 U.S.C. § 3553; *see also* William E. Adams, *The Incarceration of Older Criminals:  Balancing Safety, Cost, and Humanitarian Concerns*, 19 Nova L. Rev. 465, 476 (1995).

The policy of the FHA is to provide "for fair housing throughout the United States." 42 U.S.C. § 3601. *See also* Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351 (6th Cir.), *cert. denied*, 516 U.S. 1140 (1996); Williams v. Matthews Co., 499 F.2d 819 (8th Cir.), *cert. denied*, 419 U.S. 1021 (1974); Smith v. Woodhollow Apartments, 463 F. Supp. 16 (W.D. Okla. 1978); Metropolitan Housing Dev. Corp. v. Village of Arlington Heights, 469 F. Supp. 836 (congressional intent to use all available means to prevent housing discrimination in the suburbs), aff'd, 616 F.2d 1006 (7th Cir. 1980). Senator Mondale outlined the scope of the legislation saying "[a]ll that legislation such as this would do would be to eliminate the discriminatory business practices which might prevent a person economically able to do so from purchasing a home regardless of his race." 114 Cong. Rec. 2272, 2275 (1968). Beyond the integration of residential housing patterns, Congress also "intended to promote freedom of choice in housing .... [The FHA] 'removes the opportunity to insult and discriminate against a fellow American because of his color' ... and gives blacks freedom to move where they will." Burney v. Housing Auth. of County of Beaver, 551 F. Supp. 746, 769 (W.D. Pa. 1982) (citing 114 Cong. Rec. 5643). The element of freedom of choice is, then, paramount.

Thus, the primary purpose of the FHA has no application in the prison context.

*Cf.* Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991) (Title VII and ADEA do not

apply because the primary purpose of prison is incarceration, not employment);

McMaster v. State of Minn., 30 F.3d 976, 980 (8th Cir. 1994) (primary purpose of the

Fair Labor Standards Act has no application in the prison context); Hale v. State of Ariz.,

993 F.2d 1387 (9th Cir. 1993) (same),  To the contrary, jails and prisons are designed to

strictly regulate where and how prisoners may live.  Congress adopted the Civil Rights of

Institutionalized Persons Act, 42 U.S.C. § 1997, not the FHA, to protect the civil rights of

prisoners.  The former is specifically intended to protect persons housed in state jails and

prisons "insofar as such persons are subjected to conditions which deprive them of rights,

privileges or immunities secured or protected by the Constitution of the United States."

42 U.S.C. § 1997a. The Court finds no indication in the language or the legislative history

of the FHA to support the conclusion that Congress intended that Act to protect housing

discrimination in detention facilities; especially since such facilities are intended to limit,

rather than facilitate, prisoners freedom of movement.

While no reported case has considered whether a detention facility is a "dwelling"

within the meaning of the FHA, this precise issue has been addressed in two recent

unpublished opinions from this District.  In Gold v. Griego,. No. CIV 99-1137

DJS/WWD (D.N.M. Feb. 22, 2000), the plaintiff, as in the instant case, alleged sexual

assault as a pre-trial detainee at a county detention center in violation of the FHA.  The

court considered the legislative history and purpose of the FHA and interpretative case

law, and rejected the plaintiff's claim that the detention center fell within the meaning of

"dwelling" under the FHA.    In reaching this conclusion, the Court relied heavily on the

legislative history and purpose of the FHA which "was to promote freedom of choice in

housing and to prevent humiliation resulting from racially discriminatory housing

practices." Slip. op. at 5 (citing 114 Cong. Rec. 5643 (1968)).  The Gold opinion goes on

to quote the FHA House Report indicating that "the FHA was enacted following the

urban unrest of the mid-1960s and in the aftermath of the assassination of the Rev. Dr.

Martin Luther King, Jr.," and points out it was extended to handicapped persons in 1988

because such persons "have been the victims of unfair and discriminatory housing

practices." Slip op. at 5 (quoting 1988 U.S. Code Cong. & Admin. News 2176 and

2174).  Based on this history, the Gold court concluded, "this legislative history makes it

clear that Congress' intent was to protect a person's home." Slip op. at 6.

In Machacek v. Bustamante,. No. CIV 99-1082 JP/LFG (D.N.M. May 3, 2000),

the plaintiffs again alleged sexual assault during their treatment in a detox program at the

county detention center.  The court, citing several cases and the Gold decision, rejected

plaintiffs' claim that the detention center fell within the meaning of "dwelling" under the

FHA.

Plaintiff urges the Court to adopt a more expansive interpretation of the FHA

arguing:  "[A]lthough the original impetus for the FHA may have been to assure racial

minorities equal access to desirable neighborhoods, it was clearly written to cover

protected classes other than racial minorities ... 'dwellings' other than suburban homes ...

and acts other than simple denial of access [to housing]."  Doc. 27 at 9.  The Court agrees

with Plaintiff that both legislative changes and court rulings have extended the FHA's

protections to a greater number of people and have created a generous construction of the

notion of "dwelling."  Nonetheless, the Court finds that the amendments of the FHA and

broad judicial interpretations of that Act remain rooted in congressional intent to provide

freedom of choice in housing, a purpose antithetical to incarceration.  Thus, the Court is

unable to conclude, as Plaintiff does, that "applying the FHA to detention centers ... is

entirely consistent with the FHA's important remedial policies ...."  Id.

### III.  CONCLUSION

For all of the reasons discussed above, the Court concludes that the Hobbs City

Jail is not a "dwelling" within in the meaning of the FHA.

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss Count III of

Plaintiff's Complaint* be, and hereby is, **GRANTED**.

Dated at Albuquerque this 25th day of September, 2000.


_____
**BRUCE D. BLACK**
United States District Judge

**Attorneys:**

**For Plaintiff**
Paul J. Kennedy
Mary Y.C. Han
1122 Central Ave. SW
Albuquerque, NM  87102

Bill J. Helwig
317 North Main
Post Office Drawer 1388
Denver City, TX  79323

**For Defendant**
Gregory L. Biehler
6715 Academy Rd. NE
Albuquerque, NM  87109